**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| NICHOLE L. RICHARDS | : | |
| Plaintiff, | : | CIVIL ACTION |
| Vs. | : | |
| PAR INC., and LAWRENCE TOWING, | : | CAUSE NO. 1:17-cv-00409-TWP-MPB |
| LLC, | : | |
| Defendants. | : | |

**RESPONSE TO DEFENDANTS' MOTION IN LIMINE [95]**

Nichole L. Richards ("Plaintiff"), by counsel, respond to Defendants' PAR, Inc. ("PAR") and Lawrence Towing, LLC's ("Lawrence") Motion in Limine (ECF 95) seeking to exclude multiple matters from evidence, argument and any reference to those items. Plaintiff objects in part.

**CONCESSIONS AND SUMMARY STATEMENT**

Ms. Richards does _not_ object to motion in limine 3, 6 or 7 and only _in part_ to 1. Defendants do not provide enough detail for the Court to substantively rule on certain issues. Many of the matters in Defendants' motion are broad and unspecific such that neither Richards nor this Court can glean what factual matters Defendants wish to preclude. Because relevance is a low bar and the burden is on Defendants, challenged motions in limine should be denied. For reference, the items are restated below:

1. Golden Rule arguments.

2. Defendants' financial, economic or insured status.

3. Compromise Offers and Negotiations (408).

4. Plaintiff's alleged actual damages.

5. Evidence of medical damages, physical or mental injuries.

6. Any reference to attorneys' fees

7. Any reference to appeals taken in this case and the outcome of those appeals.

## APPLICABLE RULES OF LAW

Relevance under Rule 402 must be construed liberally. *EEOC v. Ind. Bell Tel. Co.*, 256 F.3d 516, 533 (7th Cir. 2001). And the "exclusion of relevant evidence should be used sparingly." *Id.* Relevance need not make the proposition in the case appear more probable. It must only advance the inquiry in some degree. *Id.* It is not a difficult standard to meet. *United States v. Brisk*, 171 F.3d 514, 525 (7th Cir. 1999).

> "Evidence is relevant if its exclusion would leave a chronological and conceptual void in the story." *Wilson v. Groaning*, 25 F.3d 581, 584 (7th Cir. 1994) ("Leaving out this evidence would have left the jury with an unduly sanitized and incomplete version of the facts."); see also *United States v. Vretta*, 790 F.2d 651, 655 (7th Cir. 1986).

*EEOC v. Ind. Bell Tel. Co.*, 256 F.3d 516, 533 (7th Cir. 2001).

Every piece of evidence is prejudicial in some way. *Dollar v. Long Mfg., N. C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977). The damage done to the defense is not a basis for exclusion; the question under Rule 403 is 'one of "unfair" prejudice--not of prejudice alone.' *Old Chief v. United States*, 519 U.S. 172, 193, 117 S. Ct. 644, 656 (1997). 'Unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. *Id.*

Evidence is often considered relevant background information when it permits a jury to better understand the context of an employer's actions. See Fed. R. Evid. 401 advisory committee's note.[1] *EEOC v. Ind. Bell Tel. Co.*, 256 F.3d 516, 533-34 (7th Cir. 2001)[2]

---

[1] cf. *Old Chief v. United States*, 519 U.S. 172, 186, 136 L. Ed. 2d 574, 117 S. Ct. 644[thorn]89 (1997); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 138 F. Supp. 2d 357, 365-72 (E.D.N.Y. 2001) (Weinstein, J.).

[2] Faced with voluminous evidence of Amos's lamentable conduct, the jury no doubt wondered why Ameritech did not terminate Amos sooner.

Case 1:17-cv-00409-TWP-MPB   Document 98   Filed 09/29/21   Page 3 of 17 PageID #: 543

Courts should be guided by liberal terms of Rule 402 and admit evidence unless there is some reason not to do it. *Stonehocker v. Gen. Motors Corp.*, 587 F.2d 151, 153 (4th Cir. 1978).

"The burden is on the party opposed to admission of evidence to show a reason for its exclusion." *United States v. D.K.G. Appaloosas, Inc.*, 630 F. Supp. 1540, 1562 (E.D. Tex. 1986).

## ARGUMENT

### 1. Statements advancing a "Golden Rule,"[3] "Send a Message," and "Reptile Theory" arguments.

Plaintiff's objection here is not with the Golden Rule prohibition, but everything else that Defendants try to shoehorn into that issue, including "Reptile Theory" and "Send a Message" arguments where Defendants go too far.

<u>Golden Rule</u>

Plaintiff does not object.

<u>"Send a Message" Arguments</u>

Defendants' non-specific motion is improper and should be denied. Although asking a jury to send a message to the broader regulated community by awarding an oversized amount of damages is impermissible, asking the jury to send a message to a

---

[3] A "Golden Rule" appeal in which the jury is asked to put itself in the plaintiff's position "is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982) (finding argument asking jury to trade seats with plaintiff in considering damages to be harmless error).

***particular defendant*** that it is responsible for the damage that it caused is absolutely acceptable.

The 11th Circuit tackled this issue and determined that **it was not** error when a plaintiff's counsel in closing "made it clear that a 'message should be sent," because counsel "also made it clear that an award of only compensatory damages would suffice to send that message." *Stuckey v. N. Propane Gas Co.*, 874 F.2d 1563, 1575 (11th Cir. 1989). The defendants there appealed and argued that he was instead improperly asking for punitive damages. The court disagreed, noting that "[c]ompensatory damages serve a very strong deterrent function." *Id.* There is no basis for the motion here.

<u>*"Reptile Theory" Arguments*</u>

Defendants' motion is apparently based on a book, "REPTILE: THE 2009 MANUAL OF THE PLAINTIFF'S REVOLUTION." ECF 96, p. 4. Defendants would have the Court require Plaintiff and her counsel to read a book to determine what they are not permitted to do. Defendants' argument is non-specific and should be denied.

Defendants fail to identify a single piece of evidence or argument related to this case that they seek a limiting order on.  Granting this type of scattershot motion that has no tie to the actual matters in the case at hand, would be unwieldy, imprecise, and potentially unlimited in terms of scope given the ambiguous nature of the motion. Given Defendants' inability to even provide a consolidated or clear recitation of what precisely is to be excluded by the Court, this matter, if there is even any valid basis asserted, should be left for objection at trial.  Further, this is not the case for an extensive paper battle over the use of such arguments.  Defendants' request would leave Plaintiff unsure as to what information is not permissible. Defendants have the opportunity for cross-

examination and argument of their own; to preclude Plaintiff in this undefined and boilerplate manner would be improper.

Substantively, Defendants' motion is contrary to law.  First, the theory at issue is a breach of the peace. The plain policy of the law is to forbid acts that tend to provoke violence or any breach of the peace. *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 352 (Ind. Ct. App. 1980) ("if the repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court. We approve the reasoning").

To avoid breaching the peace, the general rule is that a creditor cannot utilize force or threats, cannot enter a debtor's residence without consent, and cannot seize any property over a debtor's objections (decided prior to enactment of IC 26-1-9.1). *Birrell v. Indiana Auto Sales & Repair*, 698 N.E.2d 6, 38 U.C.C. Rep. Serv. 2d (CBC) 247, 1998 Ind. App. LEXIS 950 (Ind. Ct. App. 1998).

In *Morris v. First National Bank and Trust Co. of Ravenna*, (1970) 21 Ohio St.2d 25, 254 N.E.2d 683, the court held that intimidation or putting a person in fear for his safety exceeded the secured party's rights under the self-help provisions of the U.C.C. The court said that a breach of the peace for these purposes may consist of an act of violence or an act likely to produce violence, and that it was a public policy to discourage extrajudicial acts by citizens where those acts are fraught with the likelihood of resulting violence. *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 351 (Ind. Ct. App. 1980).

It would therefore be wholly improper for defendants to suggest that our laws do not allow for the discussion of peace, or safety rules. To the contrary, our courts require discussion of what may constitute a breach of the peace.

Indiana law is at issue here to determine whether Defendants violated federal law. *Richards v. PAR, Inc.*, 954 F.3d 965, 966 (7th Cir. 2020) ("Whether a repossessor had a "present right to possession" for purposes of § 1692f(6)(A) can be determined only by reference to state law.")

Indiana has long held that jurors are the conscience of the community because jurors "act for the body of the people of the county (*pro corpore comitatus*)." *Adams v. State*, 214 Ind. 603, 604, 17 N.E.2d 84, 85 (Ind. 1938). When approving an instruction advising the jury that they are the "conscience of our society," the Indiana Supreme Court stated that "it reminds jurors of their special role in the system of justice. . ." *Wilson v. State*, 697 N.E.2d 466, 477-78 (Ind. 1998). Our juries are the conscience of our community and are instructed "they should not agree on a verdict unless their consciences approved." *King's Ind. Billiard Co. v. Winters*, 123 Ind. App. 110, 128, 106 N.E.2d 713, 720 (Ind. Ct. App. 1952). It is appropriate in closing argument to tell the jury that they are the "moral conscience of the community and must take into account all of the facts and circumstances in this case." *Hand v. State*, 863 N.E.2d 386, 395 (Ind. Ct. App. 2007). Similarly, our jurors are required to use their "own knowledge, experience, and common sense gained from day-to-day living," to render their decisions in negligence cases. Ind. Model Civil Jury Instructions 115.

Combining these concepts, our common law theory of negligence is based on a policy of "preventing future injuries" and signifies the "moral blame attached to the wrongdoer. . ." *Id.*, *citing Prosser & Keeton on Torts* § 53, at 357-59 (5th ed. 1984). Our law requires jurors to use their own experiences to evaluate negligence, and part of those experiences will often involve common sense safety rules that the community follows. This is why when evaluating whether venue is appropriate, the court considers

"the desirability of holding a trial near those most affected (local interest in deciding local controversies at home)." *McCracken v. Eli Lilly & Co.*, 494 N.E.2d 1289, 1293 (Ind. Ct. App. 1986).  All of the things that Defendants seek to prohibit the jury from hearing are the same concepts our system has relied on for hundreds of years.

Practically, these motions are routinely denied because they fail to identify any actual specific evidence or statements related to the case that the motion seeks to exclude.[4]  Such is the case here, and a broad, amorphous motion without any relation to this case is improper. The motion should be denied.

### 2.  Defendants' financial, economic or insured status.

None of the cases cited by Defendants are FDCPA cases. Defendants' financial and economic status are relevant for the purposes of determining the appropriate measure of statutory damages under the FDCPA.  15 U.S.C. § 1692k.[5] While the Court is

---

[4] *See, e.g.*, *Aidini v. Costco Wholesale Corp.*, No. 2:15-cv-00505-APG-GWF, 2017 U.S. Dist. LEXIS 55863, at *2 (D. Nev. Apr. 12, 2017) (refusing to issue a blanket pre-trial ruling based on nothing more than suspicion);   *Hensley v. Methodist Healthcare Hosps.*, 2015 U.S. Dist. LEXIS 113565, 2015 WL 5076982, at *4-5 (W.D. Tenn. Aug. 27, 2015) (denying "Reptile Theory" motion because "Defendants have again not identified the specific evidence that is sought to be excluded"); *Jackson v. Asplundh Constr. Corp.*, 2016 U.S. Dist. LEXIS 149145, 2016 WL 5941937, at *1 (E.D. Mo. Oct. 13, 2016)(declining to issue ruling on motion based on the "reptile theory"); *Cameron v. Werner Enterprises, Inc.*, 2016 U.S. Dist. LEXIS 68711, 2016 WL 3030181, at *5 (S.D. Miss. May 25, 2016) (declining to issue ruling on motion based on reptilian theory because it was too "hypothetical"); *Bunch v. Pac. Cycle, Inc.*, 2015 U.S. Dist. LEXIS 187867, 2015 WL 11622952, at *2 (N.D. Ga. Apr. 27, 2015) (rejecting reptile theory motion because it was "overbroad").

[5] **(b) Factors considered by court.** In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors—

(1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional

7

required to consider factors specifically identified,[6] it is to also consider "other relevant factors." 15 U.S.C. § 1692k(b). Defendants' suggestion that a jury *might* prejudice the jury presumes the jury will not follow the instructions given.

Plaintiff would be open to a stipulation that *should liability attach*, statutory damages would be left to the sound discretion of the Court at the same time the Court considers attorney fees under 15 U.S.C. § 1692k(a)(3). This would eliminate the statutory factors from the jury's consideration altogether.

Plaintiff generally does not object to the motion as it relates to the existence of liability insurance in either the evidentiary portion of the trial or argument depending on Defendants' testimony as will be explained below. Regardless, the existence of liability insurance is permissible for voir dire.

Rule 411[7] itself tells us evidence of liability insurance is not permissible to prove whether the person acted negligently or wrongfully. However, it is permissible for multiple reasons other than those specifically identified. *Bernier v. Bd. of Cty. Rd. Comm'rs*, 581 F. Supp. 71, 78 (W.D. Mich. 1983) ("should the nature of defendant's proofs be such that the jury might infer defendant's inability to pay a judgment, evidence that defendant has liability insurance may become admissible as an exception to the general prohibition of insurance evidence contained in Fed.R.Evid. 411."). Plaintiff does not know what the evidence of the Defendants' financial position will be. If

---

[6] *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 388 (7th Cir. 2018).

[7] Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. **But the court may admit this evidence for another purpose**, such as proving a witness's bias or prejudice or proving agency, ownership, or control. Fed. R. Civ. P. 411 (emphasis added).

the evidence were to show that Defendants are undercapitalized or otherwise struggling, the jury's ignorance of liability insurance might require the disclosure that insurance exists. *Id.*

In addition, it appears that every district court in the Seventh Circuit has followed *Kiernan v. Van Schaik*, 347 F.2d 775, 779 (3d Cir. 1965) such that voir dire must be permitted to inquire as to prejudice, including regarding liability insurance.[8]

"[I]t is not necessary, as plaintiff seems to assert, to show that a member of the jury was in fact prejudiced; it is enough to show that the voir dire did not reasonably assure that bias or prejudice would be discovered, if present." *Art Press, Ltd. v. W. Printing Mach. Co.*, 791 F.2d 616, 619 (7th Cir. 1986).

In *Art Press, Ltd. v. W. Printing Mach. Co.*, 791 F.2d 616, 619 (7th Cir. 1986), our Seventh Circuit criticized limited voir dire:

> The only inquiry permitted beyond the basic questions about the venirepersons' identity was whether each potential juror believed he could be impartial. In *United States v. Lewin*, 467 F.2d 1132, 1138 (7th Cir. 1972), this court held that such "a general question is inadequate to call to the attention of the veniremen those important matters that might lead them to recognize or display their disqualifying attributes." The trial judge permitted no inquiry designed to elicit the venirepersons' attitudes toward the general nature or particular facts of the case. See *Fietzer*, 622 F.2d at 286. This severe limitation undermined voir dire's purpose of eliciting information that shows the biases of a venireperson or provides counsel with a basis for exercising peremptory challenges. See *Fietzer*, 622 F.2d at 284 (quoting *Kiernan v. Van Schaik*, 347 F.2d 775, 779 (3rd Cir. 1965)); *Lewin*, 467 F.2d at 1138. We therefore vacate the jury's verdict and award and remand for a new trial.

Our court "has been zealous in its protection of probing voir dire." *Beard v. Mitchell*, 604 F.2d 485, 501 (7th Cir. 1979); *Fietzer v. Ford Motor Co.*, 622 F.2d 281,

---

[8] *Art Press, Ltd. v. W. Printing Mach. Co.*, 791 F.2d 616, 619 (7th Cir. 1986);
*Fietzer v. Ford Motor Co.*, 622 F.2d 281, 284 (7th Cir. 1980);
*United States v. Dellinger*, 472 F.2d 340, 367 (7th Cir. 1972).

284 (7th Cir. 1980) (the trial court "must exercise its discretion so as not to block the reasonable exploration of germane factors that might expose a basis for challenge, whether for cause or peremptory."); *Fietzer v. Ford Motor Co.*, 622 F.2d 281, 285 (7th Cir. 1980) (confirming/summarizing former cases and criticizing trial court's "stock questions").

The jury could infer one or more of the Defendants' inability to pay a judgment, which may makes evidence that they has liability insurance admissible as an exception to Rule 411. *Weiss v. La Suisse, Societe d'Assurances sur la Vie*, 293 F. Supp. 2d 397, 414 (S.D.N.Y. 2003) ("nature of defendant's proofs be such that the jury might infer defendant's inability to pay a judgment, evidence that defendant has liability insurance may become admissible as an exception to the general prohibition").

Plaintiff (and Defendants) should be also permitted to question the venire concerning bias, including relating to insurance. *Kiernan v. Van Schaik*, 347 F.2d 775, 779 (3d Cir. 1965);[9] see also *Hoffman v. Sterling Drug, Inc.*, 374 F. Supp. 850, 859 (M.D. Pa. 1974).[10]

---

[9] A jury's impartiality may not be assumed without inquiry, as in the case of a judge. Jurors are drawn from the general body of the community for a short term of service, usually lasting a few weeks, and then return to their customary occupations with neither training nor traditions of impartiality. They must often be unaware of their own disqualification in specific cases, especially since the standards for jury service differ in various parts of the country. Litigants therefore have the right, at the least, to some surface information regarding the prospective jurors. Such information may uncover ground for challenge for cause. If it does not, it will be available in the intelligent use of the peremptory challenge, which is the antithesis of challenge for cause.
The traditional right of peremptory challenge recognizes that matters of bias or prejudice may be sensed or suspected without possibility of proof, and therefore permits counsel to exercise his inarticulate instinctive judgment, which he need not, if he could, attempt to justify.

[10] Once it is shown that insurance coverage has any role in case, party is entitled to ask following three questions of potential jurors: (1) "Are any of you or your immediate family employed by a company engaged in the casualty or liability insurance business?" (2) "Are any of you or your immediate families stockholders in any company which, in whole or in part, is engaged in the

While federal law governs procedure (Fed. R. Civ. P. 47), the seminal Indiana case is persuasive. *Stone v. Stakes*, 749 N.E.2d 1277, 1279-80 (Ind. Ct. App. 2001), on reh'g, 755 N.E.2d 220 (Ind. Ct. App. 2001). In *Stone*, the Indiana Court of Appeals held:

> Our supreme court has long held that evidence that a defendant has insurance is not allowed in a personal injury action and that its admission is prejudicial. Normally, when inadmissible evidence of insurance coverage is interjected into a trial, it is within the trial court's discretion to withdraw the case from the jury or admonish the jury. The rationale for not allowing evidence regarding insurance is that if the jury becomes aware of the fact that the defendant carries liability insurance and will not bear the brunt of any judgment, the jury may be prejudiced in favor of an excessive verdict. On the other hand, **if the jury becomes aware of the fact that the defendant does not have insurance and will bear the entire burden of any judgment, the jury may be prejudiced in favor of a minimal verdict.**

*Stone*, 1279-80 (Ind. Ct. App. 2001) (cleaned up and emphasized).

Indiana courts recognize that a jury may also be admonished concerning insurance such that the instruction cures any potential defect or allegation of error. *Duke's GMC, Inc. v. Erskine*, 447 N.E.2d 1118, 1120 (Ind. Ct. App. 1983); see also *Clouse v. Fielder*, 431 N.E.2d 148, 153 (Ind. Ct. App. 1982) ("Although generally inadmissible, evidence of insurance coverage will be admitted when the fact of coverage is relevant to a material issue. When inadmissible evidence of insurance coverage is interjected into a trial, the trial court may withdraw the case from the jury or admonish the jury.")

### 3.  Compromise Offers and Negotiations (408).

Plaintiff has no objection at this time and on the facts presented without more. Compromise Offers and Negotiations are permitted to show bias or prejudice, negating

---

casualty or liability insurance business?" (3) "Are any of you or your immediate families now or have ever been employed as a claims adjuster or otherwise by a company or concern which, in whole or in part, was engaged in the casualty or liability insurance business?"

a contention of undue delay, or another purpose rather than to prove or disprove the validity or amount of a disputed claim. Fed. R. Civ. P. 408.

### 4. Plaintiff's actual damages.

Defendant seeks to preclude Plaintiff from introducing evidence as to *any* non-statutory damages on the basis that "she failed to produce any evidence of such damages during discovery." ECF 96, p. 8. Defendants cite to Plaintiff's initial disclosures for their discovery motion, for which Defendants made no attempt to meet and confer.[11]

Pursuant to FED. R. CIV. P. 26(a)(1)(C), a party is required to disclose "a computation of any category of damages claimed . . ., making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered."

Emotional distress damages cannot and need not be "calculated" at the initial disclosure stage. *Johnson v. Columbia Debt Recovery, LLC*, No. C20-573RSM, 2021 U.S. Dist. LEXIS 92929, at \*2-3 (W.D. Wash. May 17, 2021).[12]

---

[11] The same motion was denied this year on procedural grounds for failure to meet and confer. *Johnson v. Columbia Debt Recovery, LLC*, No. C20-573RSM, 2021 U.S. Dist. LEXIS 92929, at \*2-3 (W.D. Wash. May 17, 2021).

[12]  (citing 15 U.S.C. § 1692k; *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 957 (9th Cir. 2011); *Weinstein v. Mandarich L. Grp., LLP*, No. C17-1897RSM, 2019 U.S. Dist. LEXIS 11016, 2019 WL 290578, at \*2 (W.D. Wash. Jan. 23, 2019), *aff'd in part, rev'd in part and remanded*, 798 F. App'x 88 (9th Cir. 2019); *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, No. C18-1011 RSM, 2020 U.S. Dist. LEXIS 26317, 2020 WL 758070, at \*5 (W.D. Wash. Feb. 14, 2020) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)).

In *BBC Grp. NV Ltd. Liab. Co. v. Island Life Rest. Grp. Ltd. Liab. Co.*, No. C18-1011 RSM, 2020 U.S. Dist. LEXIS 26317, at \*15 (W.D. Wash. Feb. 14, 2020), the Washington District Court held as to emotional distress damages,[13] "Since emotional distress damages do not rely on Island Life's financial records, they remain a triable issue for the jury. See *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (finding emotional distress damages "necessarily vague" and thus exempt from Rule 26(a)(1)(C) disclosure)."

The Fifth Circuit has found that "compensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury" and "may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)(C)." *Williams v. Trader Publishing Co.*, 218 F.3d 481, 486 (5th Cir. 2000) (citing *Burrell v. Crown Central Petroleum, Inc.*, 177 F.R.D. 376, 386 (E.D. Tex. 1997). Noting that the plaintiff had not sought to quantify her damages at trial with a previously undisclosed dollar value, the Fifth Circuit held that a plaintiff's failure to disclose during discovery a specific amount sought for emotional distress damages did not prohibit the plaintiff from recovering emotional distress damages at trial. *Id.*

Because they do not lend themselves to a calculation as contemplated by Rule 26(a)(1)(C), emotional damages are not required to be included in initial disclosures.

---

[13] Turning to the remaining damages, the Court finds that Island Life has waived damages for (1) lost business opportunities, including additional restaurant locations and business deals; (2) lost goodwill and reputation; and (3) remediation costs. Island Life provides no explanation for how any of these damages can be reasonably estimated without disclosure of its financial records, and the Court cannot conceive of how a jury may reasonably calculate them without the Rule 26(a) disclosures. *BBC Grp. NV Ltd. Liab. Co.*, at \*12-17.

Even if the rule were to be amended to require such an estimate or calculation of a jury function, the nondisclosure here would be harmless. Defendants were not prejudiced in any way, and they had the benefit of a full and complete discovery period, and took Plaintiff's deposition without issue.

Defendants' argument that Plaintiff did not testify concerning actual damages is provably false. Defendants' counsel's question concerning "damages," a legal term of art, followed pages of testimony concerning Defendants' intrusion onto her property, being handcuffed as a result of false statements made by Defendants that Richards had a firearm, and then a physical taking of the vehicle her then recently deceased father helped her obtain.

Richards testified at her deposition that one of the repossession agents walked up to the side of Ms. Richards porch. *Richards Deposition*, 7:8-9. The man tried to say that since her father passed away, the bank wanted to repossess the vehicle because it was locked up in an estate, which Richards denied. *Id.*, 7:25-8:10.

She told the repossession agent she was not giving him her vehicle. *Id.*8:11-13.[14] The man responded that he can either do this the hard way or the easy way. He then threatened to call the police, who would make her give him the vehicle. *Id.*, 8:11-25.

The police later arrived and questioned Richards, who explained the situation. *Id.*, 9:10-21. Ms. Richards could see them talking but could not hear what they were talking about. *Id.*, 30:6-8. Ms. Richards was told they were taking the vehicle and there was nothing she could do about it. *Id.*, 30:9-12.

After some discussion with the repossession agents, the police returned to Richards and asked her about weapons. *Id.*, 9:25-10:6. Ms. Richards explained she did

---

[14] The exact words she used were, "I'm sorry, but I'm not giving you by vehicle." *Id.*, 26:17-18.

not have any weapons and offered for the officers to "feel free to look." *Id.*10:4-6. Richards never had a gun inside the house (*Id.*, 24:21-23) and never told Lawrence Towing that she had a gun*Id.*, 24:18-20.

In response to one of the repossession agents' attempt to unhook her trailer from her vehicle, Richards said, "no, do not touch my vehicle." A police officer immediately put her in handcuffs. *Id.*, 11:1-11.

Richards explained that if she gets arrested then she will lose custody of her son. This testimony led Ms. Richards to ask for a minute in the deposition (to gather herself). *Id.*, 11:17-25. Based on the representations of the repossession agents' alleged entitlement to the vehicle, the police officer reached in Ms. Richards' pocket and took her keys. *Id.*, 12:1-11.

Both police officers told Ms. Richards that they had the right to take the vehicle. *Id.*, 30:21-31:6. They said they had a right to take Ms. Richards vehicle and there was nothing she could do about it. *Id.* 31:6-7.

*After* all of the above testimony, Defendants' counsel asked, "So can you tell me what damages you're seeking in this case?" Richards responded to the legal term of art, "That would be an answer for my attorney." *Id.*, 35:8-10. Immediately thereafter, Defendants' counsel asked about damages to personal property and whether there was any physical assault. *Id.*, 35:11-16. Defendants never questioned Plaintiff about her mental anguish, feelings of helplessness, or any other form of general emotional distress.

Emotional distress damages are recoverable under the FDCPA. *Anderson v. Specified Credit Ass'n*, No. 11-53-GPM, 2011 U.S. Dist. LEXIS 62410, at *7 (S.D. Ill. June 10, 2011). In FDCPA cases, a plaintiff may prove emotional distress damages on her own

testimony alone. *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (quoting *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003)).

Plus, Indiana law supports emotional distress damages when there is a tortious trespass. In *Cullison v. Medley*, 570 N.E.2d 27 (Ind. 1991), the Indiana Supreme Court determined "the so-called 'impact rule' does not apply to prohibit recovery for emotional distress when sustained in the course of a tortious trespass."

Here, strangers came upon Richards' property. They were told to leave and refused. The encounter led to Richards being handcuffed. Then, the strangers illegally took her vehicle. This is a trespass, both of real property and of personal property. "It will be for the jury to determine whether the trespass occurred and whether such intentional trespass foreseeably would provoke an emotional disturbance or trauma." *Cullison*, 570 N.E.2d at 29-30.

### 5.  Evidence of medical damages, physical or mental injuries.

Defendants' motion concerning physical and mental injuries is an extension of its motion relating to actual damages. Plaintiff incorporates her argument in #4 above. Plaintiff can certainly provide lay testimony about how she felt and the emotional toll this incident took on her.  Additionally, even on medical matters which are within the common experience, observation, or knowledge of layman, no expert testimony is required to permit a conclusion on causation.

### 6.  Evidence related to attorneys' fees.

Plaintiff does not object. Plaintiff agrees that the parties' attorneys' fees are not relevant for purposes of the jury trial.

**7. Reference to all Appeals taken in this case and the outcome of those Appeals.**

Plaintiff does not object. The appeals are not relevant to the jury trial.

## CONCLUSION

The Court should deny Defendants' motion in limine, except 3, 6 and 7, and for all relief that is just and proper in the premises.

Respectfully submitted,

/s/ Duran L. Keller
Duran L. Keller, Esq. (#31743-79)
**KELLER LAW**
8 N. Third Street, Suite 403
Lafayette, Indiana 47901
Telephone: (765) 444-9202
Facsimile:  (765) 807-3388
Email: duran@kellerlawllp.com
*Attorney for Plaintiff Nichole Richards*

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing papers were served upon all parties via CM/ECF.

Dated: Lafayette, Indiana          /s/ Duran L. Keller
      September 29, 2021          Duran L. Keller, Esq. (#31743-79)