**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| NICHOLE L. RICHARDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 1:17-cv-00409-TWP-MPB |
| | ) |
| PAR, INC. and LAWRENCE TOWING, LLC, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON PLAINTIFF'S MOTION FOR AWARD OF ADDITIONAL DAMAGES**
**AND MOTION FOR ATTORNEY'S FEES AND COSTS**

This matter is before the Court on a Motion for Award of Additional Damages (Filing No. 138) and a Motion for Attorney's Fees and Costs (Filing No. 140), filed by Plaintiff Nicole L. Richards ("Richards"). Following a jury trial in which she was awarded damages against Defendants PAR, Inc. and Lawrence Towing, LLC (collectively, "Defendants") for violations of the Fair Debt Collection Practices Act ("FDCPA") and Indiana's Crime Victims Relief Act ("CVRA"), Richards filed these motions. For the following reasons, the Motions are **granted in part** and **denied in part**.

**I.      BACKGROUND**

In February 2015, Richards purchased a used 2010 Chevrolet Tahoe ("the Tahoe") from Tru Worth Auto. (Filing No. 1 at 1.) Huntington National Bank ("Huntington") financed the purchase and obtained a lien on the vehicle.  (Filing No. 44-1 at 2.)  Richards missed payments on the Tahoe and defaulted under the terms of the loan agreement.  *Id.*  The terms of the loan agreement provided that Huntington had the right to repossess the Tahoe in the event of Richards' default.  *Id.*

Huntington contracted with PAR to repossess the Tahoe, and PAR subcontracted the job to Lawrence Towing. (Filing No. 1 at 2.) On December 6, 2016, Lawrence Towing went to Richards' home located in Indianapolis, Indiana to repossess the vehicle. (Filing No. 38-1 at 6.) Because the Tahoe had a trailer attached to it and was not readily accessible, Lawrence Towing had to make contact with Richards to accomplish the repossession. *Id.* at 3. Richards refused to give Lawrence Towing the vehicle. *Id.* at 8.

Because he believed he heard Richards say that she had a gun, the Lawrence Towing employee then contacted the police. (Filing No. 169 at 227-231). Richards refused to relinquish the vehicle even after the police's arrival. When the employee went to unhook the trailer attached to the Tahoe, Richards stepped off her porch and was put in handcuffs by the police officer. Richards was not taken into custody, but once she was handcuffed, the Tahoe was towed away and repossessed. (Filing No. 1 at 3.)

On February 9, 2017, Richards filed this action. (Filing No. 1.) In her Complaint, Richards alleged violations of the FDCPA and the CVRA. *Id.* On November 1, 2021, a two-day jury trial was held on each of Richards' claims. The jury returned a verdict in favor of Richards on both claims against each of the Defendants, awarding as follows: Count 1 as to the Fair Debt Collection Practices Act, finding Defendant Lawrence Towing, LLC liable in the amount of $5,167.97, Count II as to the Indiana Crime Victims Relief Act, finding Lawrence Towing, LLC liable in the amount of $4,285.00, Count I as to the Fair Debt Collection Practices Act, finding Par, Inc. liable in the amount of $26.00, and Count II as to the Indiana Crime Victims Relief Act, finding Par, Inc. liable in the amount of $4,285.00. (Filing No. 129.) Her total damage award was $13,763.97.

Richards now seeks additional damages from the Court, as well as attorneys' fees and costs as a successful party bringing FDCPA and CVRA claims. (Filing No. 138; Filing No. 140.)

## II.    LEGAL STANDARD

The FDCPA provides for costs and a "reasonable attorney's fee" to a prevailing party.  15 U.S.C. 1692k(a)(3).  "Unlike most private tort litigants, [a plaintiff who brings an FDCPA action] seeks to vindicate important rights that cannot be valued solely in monetary terms, and congress has determined that the public as a whole has an interest in the vindication of the statutory rights." *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995) (citation and quotation omitted).  "The general rule for calculating attorney's fee awards under fee shifting statutes is applicable to attorney's fees awards under the FDCPA."  *Young v. Accounts Recovery Bureau, Inc.*, No. 1:11-cv-0025-WTL-DKL, 2012 WL 3764014, at *1 (S.D. Ind. Aug. 8, 2012) (citing *Gastineau v. Wright*, 592 F.3d 747, 748-49 (7th Cir. 2010)). The District Court has the discretion to adjust both the time spent and the rate charged in order to determine a reasonable fee. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The rates at which the requesting attorney normally charges for similar work, as well as rates which other attorneys charge for comparable work in the relevant community, also are to be considered by the Court in establishing the reasonableness of the hourly rate. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010)

The FDCPA also provides for an award of "additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). In determining whether to award additional damages, the FDCPA directs the Court to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 USC § 1692k(b)(1).

Similarly, Indiana's CVRA allows a person who suffers pecuniary loss as a result of certain property crimes to seek treble damages and attorneys' fees.  Ind. Code § 34-24-3-1. In considering

whether to award treble damages under the CVRA, "there must be a finding that the defendant's actions were so heinous as to require exemplary damages, or warrant quasi criminal CVRA liability." *Direct Connect Logistix, Inc., v. Midnight Solutions, Inc*., 2020 WL 3871205 (S.D.Ind. 2020).

## III.    DISCUSSION

### A.    Motion for Additional Damages

In addition to the damages awarded to her by the jury, Richards seeks additional damages from the Court on both her CRVA and FDCPA claims.  (Filing No. 138.)  For her CVRA claim, Richards puts forth three reasons for additional damages:  (1) a full additional damage award should be the Court's default; (2) there are no mitigating circumstances; and (3) a full additional damages award will honor the jury's determination.  (Filing No. 139 at 2.)  As for her FDCPA claim, Richards contends that additional damages of $1,000.00 are appropriate after assessing "relevant factors," which includes "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  *Id.* at 5-6.

In response, Defendants contest the award of additional damages for several reasons.  First, Defendants argue that Richards has presented no case law or other legal authority supporting the award of additional damages.  (Filing No. 148 at 3.)  Defendants argue there is no support of Richards' argument that the award of additional damages should be the "Court's default".  *Id.* Additionally, Defendants assert the contention that additional damages will "honor the jury's determination" is without merit because one of the jury instructions included language that allowed the jury to provide these additional damages.  *Id.* at 4-5.  Finally, regarding Richards' request for

statutory damages under the FDCPA, Defendants argue that she has not demonstrated that any of the factors have been met justifying the award of additional damages. *Id.* at 8.

The Defendants' argument is persuasive. Richards acknowledges that "there is no absolute entitlement to an award of treble damages under the CVRA." *Schrenger v. Caesars Indiana*, 825 N.E.2d 879, 884 (Ind.Ct.App. 2005). "[T]rial courts have wide discretion not to award any damages in excess of the actual loss." *Wysocki v. Johnson*, 18 N.E.3d 600, 605 (Ind. 2014). Further, "it is highly appropriate for the trial court to weigh any equities before deciding the amount, if any, owed as exemplary damages." *Id.* Richards has not provided any legal authority or precedent for the awarding of additional damages under the CVRA. As argued by Defendants, the jury was instructed that the total amount of damages awarded may be up to three times the actual damages sustained by Plaintiff, (*see* Filing No. 124-3), which minimizes Richard's argument that additional damages will "honor the jury's determination." Under the circumstances here, the Court finds no inequities which justify the award of additional damages under the CVRA.

Additionally, the evidence presented at trial does not support a finding that Defendants' actions were sufficiently "heinous" to support the award of additional damages.

As to Richards' FDCPA claim, a review of the relevant factors does not support an additional award. The FDCPA does not mandate an award of statutory damages in every FDCPA case, rather, "it is within the district court's discretion to decide whether and if so how much to award, up to the $1,000 ceiling." *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997). Richards provides little support for the relevant factors, asking the Court to negatively interpret Defendants' exercising their right to appeal to the United States Supreme Court and contacting the police. (Filing No. 139 at 3-4.) But Defendants exercising their procedural rights is not "persistence of noncompliance."

Moreover, as noted earlier, based on the testimony presented at trial, there is no evidence that Defendants' violation of the FDCPA was especially heinous or intentional. Rather, the evidence at trial alleged a single FDCPA violation, and an isolated incident between Richards and Lawrence Towing, LLC's employee. Richards did not present any evidence that either Defendant engaged in frequent, non-compliance with the FDCPA. Defendant PAR was not present when the incident occurred and Richards did not present any testimony from a representative of PAR, or evidence concerning PAR's knowledge of the incident at the time that it transpired. Under the facts of this case, an award of statutory damages is not justified pursuant to the factors the Court is directed to consider under 15 U.S.C. § 1692k(b)(1).

Thus, in the Court's discretion, Richards' Motion for Additional Damages is **denied**.

**B.** **Motion for Award of Attorney's Fees and Costs**

"Plaintiffs who prevail under the [FDCPA] are entitled to an award of costs and reasonable attorney's fees." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009). The parties agree that Richards qualifies for a fee and cost award but dispute the appropriate amount. Richards seeks a total of $314,073.99: $310,826.60 in attorneys' fees and $3,207.39 in costs. (Filing No. 141.) The attorneys' fees are comprised of 308.7 hours of work by counsel Robert Duff at $445.00 per hour, 158.1 hours for counsel Duran Keller at $400.00 per hour, 135.9 hours for counsel Adina Rosenbaum at $764.00 per hour, and 51.1 hours for Mr. Keller's paralegal at a rate of $125.00 per hour. *Id.* at 5.

"Although there is no precise formula for determining a reasonable fee, the district court generally begins by calculating the lodestar—the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended." *Schlacher*, 574 F.3d at 856 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983)); *see also Gastineau*, 592 F.3d at 748 ("The touchstone

for a district court's calculation of attorney's fees is the lodestar method, which is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended."). In determining the lodestar, the court must bear in mind that a defendant is not required to pay for hours that are "excessive, redundant, or otherwise unnecessary." *Johnson v. GDF, Inc.*, 668 F.3d 927, 931 (7th Cir. 2012) (citing *Hensley*, 461 U.S. at 434). The lodestar, however, is just the starting point. *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 638 (7th Cir. 2018). After calculating the lodestar, "[t]he district court may then adjust that figure to reflect the various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher*, 574 F.3d at 856-57.

## 1.   **Reasonableness of the Hourly Rate**

Defendants object to Richards' counsels' hourly rates as unreasonably high. Generally, a reasonable hourly rate is based on what the attorney charges and receives in the market from paying clients for the same type of work. *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003). Richards bears the burden of producing satisfactory evidence that the hourly rate is reasonable and in line with those prevailing in the community. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). If Richards satisfies this burden, the opposing party must offer evidence setting forth "a good reason why a lower rate is essential." *Id.* (internal quotation and citation omitted).

"[A]n attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services." *Owens v. Howe*, 365 F. Supp. 2d 942, 947 (N.D. Ind. 2005) (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999)). The "next best evidence" of an attorney's market rate may be evidence of fee awards the attorney has received in similar cases. *Spegon*, 175 F.3d at 555; *Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 491 (7th Cir. 2009) ("a previous attorneys' fee award is

useful for establishing a reasonable market rate for similar work").  In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court indicated that to aid the court in determining the appropriate market rate for the services of an attorney, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."

In support of the requested rates, Richards offered the affidavits of two attorneys: Jon Laramore and Syed Ali Saeed.  (Filing No. 141-4; Filing No. 141-5.)  According to Richards, these two affidavits show that these attorneys are "familiar with the relevant legal market, the rates charged by the lawyers of various degrees of skill and experience and their conclusion that the rates charged by attorneys Duff and Keller are reasonable based on that knowledge."  *Id.* (Filing No. 141 at 3.)  Richards also contends that Mr. Laramore's affidavit supports that Ms. Rosenbaum's $764.00 hourly rate is reasonable.  *Id.* at 3-4.

In response, Defendants argue that each of the hourly rates requested by Richards are excessive.  (Filing No. 160 at 6.)  Defendants assert that Richards has not offered any evidence from an attorney of "reasonable comparable skill, experience, and reputation" in the Indianapolis area to support the hourly rates sought.  *Id.* at 8-9.  In support, Defendants submitted the affidavit of Norman Funk, an Indianapolis attorney and expert in hourly rates. (Filing No. 160-1.) Mr. Funk's testimony is that Mr. Saeed is an attorney with extensive experience in class action litigation and relies on cases from the Northern District of Indiana.  *Id.* at 9.  As such, Mr. Saeed's testimony does not equate to the "simple" and "uncomplicated" nature of Richards' FDCPA and CVRA claims, nor does it consider reasonable fees for such claims paid in the Southern District of Indiana. *Id.*  Likewise, Mr. Funk opines that Mr. Laramore's testimony lacks gravitas as his affidavit

concerns his rate as a respected appellate attorney at a large, Indianapolis law firm, whose rates are not comparable with sole practitioners. *Id.* at 10. Additionally, Mr. Funk argues that Mr. Laramore is also not an objective third party as he could benefit from the Court's final decision on this matter. *Id.*

While the Court acknowledges that some deficiencies exist in Richards' supporting affidavits from Mr. Laramore and Mr. Saeed, the affidavits from Richards' attorneys and the supporting billing records do, at minimum, support Mr. Duff's requested hourly rate. The Court is aware of the rates attorneys in the Southern District of Indiana charge and appropriate hourly rates. Courts in this district have also awarded rates higher or substantially similar, based on inflation, to other attorneys bringing successful FDCPA claims. *See Thompson v. Select Portfolio Servicing, Inc.*, No. 1:20-cv-1924-SEB-TAB, 2021 WL 4307002, at *3 (S.D. Ind. Sept. 22, 2021) (finding a rate of $600 reasonable); *Swike v. Med-1 Solutions, LLC*, No. 1:17-cv-1503-JMS-MPB, 2018 WL 2126520, at *5 (S.D. Ind. May 9, 2018) ($550 per hour rate reasonable); *Blair v. Green Square Co. LLC*, No. 1:20-cv-08888-JMS-MPB, 2020 WL 6827247, at *5 (S.D. Ind. Nov. 2020) ($367 per hour rate reasonable). Given these previous findings, and Mr. Duff's 29 years of experience as a practicing lawyer, the Court finds the requested rate of $445.00 per hour reasonable.

The rates of Mr. Keller and Ms. Rosenbaum, however, are not similarly supported. Unlike Mr. Duff, Mr. Keller has only been practicing for seven years. (Filing No. 141-2.) Mr. Keller's experience is less than one quarter of Mr. Duff's, and it is unreasonable to compensate him at an hourly rate that is only $45.00 less. This was not a case involving complex legal issues or any other circumstances justifying an increase in hourly rates, the Court finds that the appropriate rate for Mr. Keller's services is $350.00 per hour.

Additionally, while Ms. Rosenbaum has almost twenty years of practice and a demonstrated record of experience in various courts, Richards has provided no evidence that the hourly rate she requests is the market rate for similar work within the Southern District of Indiana. In fact, Ms. Rosenbaum attests that her requested rate is the current rate for an attorney with her years of experience "under the "LSI Laffey Matrix," an attorneys' fee matrix for complex federal litigation in the District of Columbia" ([Filing No. 141-3 at 3](#)).  As argued by Defendants, Richards has not presented any authority supporting the proposition that the Southern District of Indiana has approved this matrix, and the Seventh Circuit has "expressed some skepticism" about its use. *Montanez v. Simon*, 755 F.3d 547 (7th Cir. 2014). Here, the case does not involve complex federal litigation and the Court finds its methodology to be unpersuasive. Given that Ms. Rosenbaum has less experience than Mr. Duff, consideration of the comparable appellate counsel rates cited in the parties' affidavits for the Southern District of Indiana, and because the issues in the appeal were not complex, the Court finds it reasonable that her hourly rate be set at $400.00 per hour.

### 2.     Reasonableness of the Expended Hours

Now that the Court has determined a reasonable hourly rate, the Court must then assess the attorneys' time entries to exclude any hours deemed "excessive, redundant or otherwise unnecessary." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001). If the prevailing party fails to exercise the proper billing judgment, a court should exclude from the fee calculation "hours that were not reasonably expended." *Owens*, 365 F. Supp. 2d at 948. To determine the reasonableness of the hours expended, courts consider several factors, including the time and labor required, the novelty and difficulty of the issue, the legal skill required, the reputation of the attorneys, the time burdens imposed by the client or the circumstances, and awards in similar cases. *Id.* at 947 (citing *Hensley*, 461 U.S. at 433).

As for the number of hours Richards seeks, Defendants argue that the involvement of multiple lawyers at different points in Richards' case is an unreasonable duplication of effort. (Filing No. 160 at 14.)  Defendants contend that "a careful review of Mr. Duff and Mr. Keller's billing sheets disclose the assessment of legal fees for administrative work, duplicative work, and work that was otherwise wholly unnecessary to advance their client's interests." *Id.* at 15. Specifically, Defendants assert that the time counsel spent on travel, talking to one another, and talking to office staff was unreasonable.  Likewise, Defendants argue that Mr. Duff's time billed for working on Richards' appeal and for trial should be rejected as Ms. Rosenbaum was retained specifically for the purpose of handling the appeal and Mr. Keller played the lead role at trial. *Id.* at 17.

Two lawyers performing the same task does not necessarily require that the hours must be deducted. *Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008).  Instead, the Court focuses its inquiry on whether the time was "reasonably expended." *Id.*  The Court will address each attorney's hours individually.

### i.     Mr. Duff's Hours

While the Court does not believe that Richards' attorneys unnecessarily duplicated efforts at all stages of the case, the Court finds issues with several of Mr. Duff's requested hours.  The first are two entries in which Mr. Duff seeks .1 hours for the receipt of deposition transcripts. (Filing No. 141-1 at 18.)   Generally, attorney or paralegal time should not be charged for administrative tasks. *Bratton v. Thomas Law Firm, PC*, 943 F. Supp. 2d 897, 907 (N.D. Ind. 2013). Courts in the Seventh Circuit have identified a variety of tasks as administrative in nature, including organizing file folders, document preparation, copying or faxing documents, scheduling matters, and mailing letters. *Id.* at 907-08 (citing *Spegon*, 175 F.3d at 553).  This Court also

classifies the receipt of documents which one does not review to fall into the category.  Thus, two .1 entries for receipt of depositions are removed from the total number of hours.  Similarly, the Court reduces Mr. Duff's hours by .1 for having repetitive entries for both "Receive Mediator's Report to the Court" and "Receive filed Mediator's Report."  (Filing No. 141-1 at 19.)  The Court also reduces the hours by .3 for three "receipt" entries for receiving Ms. Rosenbaum's appearance, Richards' appellant brief, and the reply brief.  *Id.* at 22-23.

Additionally, the Court does not find Mr. Duff's entries related to the review of specific Supreme Court cases as "reasonable" expenses that would be charged to a client.  Mr. Duff seeks 2.5 hours total for the review of oral argument transcripts and legal opinions for a case that was before the Supreme Court.  *Id.* at 21-22.  While these cases may have related to Richards' claims, given Mr. Duff's practice and experience, familiarizing himself with new Supreme Court opinions is relevant to his entire practice, not solely this specific case.  Therefore, the Court reduces Mr. Duff's hours by 2.5 hours.

Finally, the Court finds there are some unreasonable entries related to Richards' appeal.  Mr. Duff seeks 9.9 hours for working on the appellant brief (Filing No. 141-1 at 22), but Ms. Rosenbaum's entries reveal that she too "[r]esearched and drafted opening brief" several days later.  (Filing No. 141-3 at 4.)  Given that Ms. Rosenbaum appears to have taken the lead on Richards' appeal, these hours are removed from Mr. Duff's total.  Additionally, given that Mr. Duff appeared to play no specific role at the Seventh Circuit oral argument, the Court likewise finds his entry of 9.7 hours for traveling and attending the oral argument unreasonable.

Therefore, the Court reduces Mr. Duff's total hours by 22.7 hours.

### ii.   __Mr. Keller's and his Paralegal's Hours__

The Court also finds several issues with Mr. Keller's entries, for both himself and his paralegal.  Specifically, there are several entries that fail to provide sufficient information to this Court, often merely including a verb without inclusion of any specifics. The entries at issue are listed below[1]:

| | | |
|---|---|---|
| 10/12/2020 | Discuss . . . | .1 |
| 10/18/2021 | Preparation of document regarding: . . . | .2 |
| 10/22/2021 | Draft . . . , edited . . . | 4.6 |
| 10/23/2021 | Organize forms for . . . | 1.9 |
| 10/24/2021 | Communicate . . . | .7 |
| 10/27/2021 | Email . . . | .2 |
| 10/28/2021 | Finished the . . . | 1.6 |
| 10/28/2021 | Received and reviewed the documents re: . . . | .3 |
| 10/28/2021 | Analyze . . . | .4 |
| 10/28/2021 | View . . . , incorporate into notes | 1.2 |
| 10/28/2021 | Prepared and administered . . . | 3.7 |
| 10/30/2021 | Conduct research into . . . . Prepare for . . . . | 1.1 |
| 10/31/2021 | Prepare documents before leaving office | .3 |
| 10/31/2021 | Work on . . . | .5 |
| 11/01/2021 | Begin compiling  . . . | .7 |

While the Court understands redactions to protect privileged information, Richards bears the burden of supporting requested attorneys' fees and these entries fail to provide enough

---

[1] Even if more information had been provided, the Court also questions whether some of these entries were clerical tasks that would not be reasonably billed to a client.

information. While some additional entries were almost equally ambiguous, the Court allowed them as they made specific reference either to trial preparation or communication to Mr. Duff. Thus, the Court reduces Mr. Keller's hours by 4.3 hours and his paralegal's hours by 13.2 hours.

### iii. Ms. Rosenbaum's Hours

Finally, the Court finds no issues with Ms. Rosenbaum's entries nor do the Defendants appear to raise any specific issues. Therefore, the Court makes no reduction of her hours.

### C. Lodestar Calculation

Having made the necessary adjustments to the counsels' hourly rates and related time entries, the Court finds that Richards is entitled to the following attorneys' fees:

- Robert Duff:            $445 per hour for 286 hours =              $127,270.00
- Duran Keller:           $350 per hour for 153.8 hours =            $53,830.00
- Mr. Keller's Paralegal: $125 per hour for 37.9 hours =            $4,737.50
- Adina Rosenbaum:        $400 per hour for 135.9 hours =           $54,360.00

  Total:                                                            $240,197.50

### D. Costs

Finally, Richards seeks $3,207.39 in costs. (Filing No. 141 at 5.) Defendants have not objected to this amount and the Court sees no reason for not awarding it in full. The entire amount of $3,207.39 is awarded to Richards.

### IV. CONCLUSION

For the foregoing reasons, Richards' Motion for Award of Additional Damages (Filing No. 138) is **DENIED,** and Richards' Motion for Attorney's Fees and Costs (Filing No. 140) is **GRANTED IN PART and DENIED IN PART**. Richards is awarded attorneys' fees and costs **in the amount of $243,404.89** against Defendants.

Plaintiff's Motion to Compel (Filing No. 155) is **DENIED** as moot. In this entry, the Court has issued rulings on Plaintiff's Motions for additional damages, attorney's fees and costs. Billing entries and records from Defendants' counsel are not relevant or necessary for the Court to rule on Plaintiff's Motions.

      **SO ORDERED.**

Date:   8/16/2022

                                      Hon. Tanya Walton Pratt, Chief Judge
                                      United States District Court
                                      Southern District of Indiana

DISTRIBUTION:

Gregory M. Bokota
GARAN LUCOW MILLER P.C.
GBokota@garanlucow.com

Timothy James Brown
GARAN LUCOW MILLER, P.C.
tbrown@garanlucow.com

Jennifer E. Davis
GARAN LUCOW MILLER PC
jdavis@garanlucow.com

Robert E. Duff
INDIANA CONSUMER LAW GROUP
robert@robertdufflaw.com

Duran Keller
KELLER LAW LLP
duran@kellerlawllp.com

Courtney A. Krause
GARAN LUCOW MILLER, P.C.
ckrause@garanlucow.com